UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

MALLORY A. HAMLER,

                      Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

───────────────────────────────

**Decision and Order**

19-CV-6162-HBS
(Consent)

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, cited hereafter as "Tr."), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 11, 13. Plaintiff Mallory A. Hamler challenges the final decision of the Commissioner of Social Security (the "Commissioner") that she is not entitled to Disability Insurance Benefits under Title II or Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on the papers under Rule 78(b).

## II.    LEGAL STANDARD

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether [the Commissioner] applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and

citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and editorial marks and citations omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing the Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner

2

merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to determine the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

### III. DISCUSSION

Hamler argues that the ALJ erred by rejecting a portion of Dr. Hilburger's opinion concerning Hamler's social limitations. *See* Dkt. No. 11-1 at 14-18. Because the Court agrees,

4

remand is warranted, and the Court need not address Hamler's other arguments.

Hamler alleges that she became disabled as of January 2016 in part due to her depression and anxiety.  *See* Tr. 73, 239.  The medical evidence shows that Hamler has received treatment for mental health issues.  Beginning in May 2016, Hamler met with Andrew C. Hilburger, M.D., a neurologist, for headache and memory problems.  *See* Tr. 401.  Hamler complained that she had short-term and long-term memory deficits.  Tr. 399, 401.  Although she did not initially report any "recent stressors," Tr. 401, by September 2016, Hamler was complaining of "great stress."  Tr. 397.  Dr. Hilburger's impression was that Hamler "may be depressed."  Tr. 398.

Within Dr. Hilburger's treatment notes is Hamler's MMPI-2 profile,[1] which is dated October 9, 2016.  *See* Tr. 403-11.  The profile states that "depressed mood" is one of Hamler's "primary problems emerging from a somewhat mixed symptom pattern."  Tr. 406.  Hamler is nervous, tense, unhappy, and "quite worried."  *Id.*  She is overly sensitive to criticism and "tends to blame herself a great deal and feels that she has not been treated well."  *Id.*  Hamler is also "inhibited and overcontrolled, relying on denial and repression to deal with anxiety and conflict."  *Id.*  In her MMPI-2 profile, Hamler "endorsed a number of items suggesting that she is experiencing low morale and a depressed mood," that she is preoccupied with "feeling guilty and unworthy," and that she feels hopeless and "feels that she is a condemned person."  *Id.*  In

---

[1] MMPI-2 stands for "Minnesota Multiphasic Personality Inventory-2."  It is a test "used to measure personality traits as well as possible malingering."  *Wedge v. Astrue*, 624 F. Supp. 2d 1127, 1131 (C.D. Cal. 2008).  Among other things, the test "considers where [a person] falls on scales measuring traits such as depression, hypochondriasis, hysteria, paranoia, and mania."  *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 833 (7th Cir. 2005).

5

addition, Hamler "views the world as a threatening place" and "sees herself as having been unjustly blamed for others' problems." *Id.* Her "self-critical nature prevents her from viewing relationships in a positive manner." Tr. 407. Regarding interpersonal relations, the profile indicates that Hamler "is easily hurt by others," is "uneasy in close interpersonal involvements," can be resentful of others, is uncooperative, and may be "visibly uneasy around others." Tr. 407-08. Hamler's scores "seem to indicate a low potential for change." Tr. 408.

In September 2017, Hamler was assessed for mental health treatment at Spectrum Human Services. Tr. 471. Hamler expressed unrelenting depression, recent traumatic stress due to family issues, and a sense of isolation and alienation. Tr. 484-85. Treatment notes from Spectrum show that Hamler attributed her depression and anxiety to post-partum depression and stressful family relationships. Tr. 515, 518. Similarly, treatment notes from Livingston County Mental Health Services indicate that Hamler has problems with self-esteem, self-criticism, and coping. *See* Tr. 456, 460.

In the decision, the ALJ found that one of Hamler's severe impairments is "unspecified depressive disorder." Tr. 6. The ALJ afforded "some weight" to Dr. Hilburger's MMPI-2 profile, but appears to have rejected his restrictive view of Hamler's social limitations. Tr. 14-15. Still, the ALJ included other mental-health related restrictions in the RFC determination: Hamler could perform simple routine work and make simple workplace decisions, could not work at a production rate pace, could maintain attention and concentration in two-hour increments, and could tolerate minimal changes in workplace processes and settings. Tr. 9.

As Hamler points out, the problem is that the ALJ did not have an adequate basis for, on the one hand, adopting Dr. Hilburger's opinion in some respects and including non-exertional limitations in the RFC, while, on the other hand, rejecting his opinion insofar as it related to Hamler's social limitations.  It is well-established that "an ALJ who adopts only portions of a medical opinion in the RFC assessment must explain his or her decision to reject the remaining portions."  *Boston v. Berryhill*, No. 16-CV-342, 2017 WL 10605166, at *13 (W.D.N.Y. Aug. 2, 2017).  Furthermore, because an ALJ is not a medical expert, she cannot reject a medical source's opinion (or a portion thereof) based simply on her own lay opinion of the medical evidence.  *See Otts v. Colvin*, No. 15-CV-6731, 2016 WL 6677192, at *3 (W.D.N.Y. Nov. 14, 2016) (stating that "an ALJ cannot substitute his or her own judgment for a competent medical opinion"); *Ruffin v. Comm'r of Soc. Sec.*, No. 18-CV-1307, 2020 WL 419365, at *2 (W.D.N.Y. Jan. 27, 2020) ("Though the RFC need not correspond perfectly to one medical opinion, an ALJ must generally rely on *some* medical opinion when considering what limitations, if any, a claimant may have.").  This is especially so when the claimant has a mental impairment, as mental limitations "are by their nature highly complex and individualized," and may manifest in "individualized and counterintuitive ways" that a layperson might fail to appreciate.  *Stoeckel v. Comm'r of Soc. Sec.*, No. 18-CV-1475, 2019 WL 5445518, at *2-3 (W.D.N.Y. Oct. 24, 2019).

In this case, the ALJ rejected Dr. Hilburger's assessment of Hamler's social limitations based on her own lay analysis of the medical evidence.  *See* Tr. 8, 10, 14-15.  For example, the ALJ opined that Hamler "has no restrictions with socialization" within the workplace because

7

she "cares for her young children," lives "with her husband and her parents," and "goes grocery shopping." Tr. 8. The ALJ also believed Hamler had no social limitations because her mental status examinations were routinely normal. Tr. 14-15.

As a layperson, the ALJ could not infer from Hamler's ability to interact with loved ones or medical professionals that she could interact with strangers, co-workers, and supervisors in a competitive work environment. While this might seem like the sort of factual, common-sense inference that an ALJ is entitled to make, given the complexities of mental illness (and the functional limitations arising therefrom), it is simply not an appropriate subject for lay judgment. *See, e.g.*, *Stoeckel*, 2019 WL 5445518, at *3 ("Without some sort of medical opinion to make the connection, the ALJ had no basis to conclude that, because [the claimant] could socialize with friends and family and 'occasionally' go out to dinner, she could operate effectively in a competitive work environment [notwithstanding her bipolar and depressive disorders]."). For the same reason, the ALJ could not conduct her own analysis of the treatment notes to conclude that Hamler "consistently interacts with others in an appropriate manner" and "has no restrictions with socialization." Tr. 8, 13-14.

In short, having fashioned her own conclusions regarding the nature of Hamler's depression and its attendant social limitations, the ALJ proceeded to reject Dr. Hilburger's more restrictive view. *See* Tr. 14-15. But because she relied on no competent medical opinion to do so, and instead supplanted Dr. Hilburger's opinion with her own lay judgment, the ALJ erred. *See Garcia v. Apfel*, No. 98-CV-1370, 1999 WL 1059968, at *6 (S.D.N.Y. Nov. 19, 1999) ("While

an ALJ is free to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (internal brackets, quotation marks, and ellipses omitted)).

Accordingly, remand for further proceedings is warranted. The Court declines to address the Commissioner's counterargument—that the MMPI-2 profile was a subjective test that shed no light on Hamler's objective social abilities—as the ALJ did not rely on that reasoning in the decision. *See DiFrancesco v. Comm'r of Soc. Sec.*, No. 18-CV-376, 2020 WL 467720, at *3 (W.D.N.Y. Jan. 29, 2020) ("This court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

## IV. CONCLUSION

For the reasons discussed herein, the Court denies the Commissioner's motion (Dkt. No. 13) and grants Hamler's cross-motion (Dkt. No. 11). The Court vacates the Commissioner's final decision and remands the matter for further proceedings consistent with this Decision and Order. The Clerk of Court is directed to close the case.

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: September 30, 2020